## In re YARYAN NAVAL STORES CO.

(Circuit Court of Appeals, Sixth Circuit. May 15, 1914.)

### Nos. 2598, 2599.

BANKRUPTCY (§ 18½ New, vol. 8 Key-No. Series)—CORPORATIONS—INVOLUN-
TARY PROCEEDINGS—DEFENSES.

    Under Bankr. Act July 1, 1898, c. 541, § 4, 30 Stat. 547 (U. S. Comp.
St. 1901, p. 3423), as amended by Act June 25, 1910, c. 412, §§ 3, 4, 36
Stat. 839 (U. S. Comp. St. Supp. 1911, p. 1494), which provides that any
corporation, with specified exceptions, may become a voluntary bankrupt,
or may be adjudged an involuntary bankrupt, "and shall be subject to
the provisions and entitled to the benefits of this act," an order of a
court of equity appointing receivers for the property of a corporation, en-
joining the corporation and its officers from interfering with the posses-
sion of the receivers, and all creditors from taking steps to enforce their
claims other than proving them in that suit, does not interfere with the
right of the corporation or any of its creditors to institute proceedings
to have it adjudged a bankrupt.

Appeal from the District Court of the United States for the North-
ern District of Ohio; John M. Killits, Judge.

In the matter of the Yaryan Naval Stores Company, bankrupt. On
appeal from order of adjudication. Affirmed.

C. A. Seiders, of Toledo, Ohio, for appellants Brunswick Bank &
Trust Co. and others.

G. P. Kirby, of Toledo, Ohio, for appellants James S. Brailey and
others.

C. F. Chapman and C. A. Schmettau, both of Toledo, Ohio, for ap-
pellees.

Before WARRINGTON and KNAPPEN, Circuit Judges, and
SESSIONS, District Judge.

SESSIONS, District Judge. The Yaryan Naval Stores Company is
an Ohio corporation having factories and places of business located
at Brunswick in the state of Georgia and at Gulfport in the state of
Mississippi. On May 24, 1913, in a suit brought by a creditor of the
corporation, the United States District Court for the Southern District
of Georgia appointed receivers of its property. The same receivers
were appointed in Mississippi. They immediately qualified and took
possession of all the property of the corporation in those states. The
order appointing the receivers was in the usual form in such cases,
commanding the officers, agents, and employés of the Yaryan Naval
Stores Company to turn over and deliver to the receivers all of its
property, authorizing the latter to continue the business and to operate
the plants at Brunswick, Ga., and Gulfport, Miss., requiring all cred-
itors to intervene in that suit and assert their claims, and enjoining—

"the defendant company and its officers, directors, agents and employés and
all other persons claiming to act by, through, or under said company, and all
creditors and persons whomsoever, from interfering or attempting to inter-
fere in any manner whatsoever with the possession, use, operation, or control
of any part of said property, or interfering in any way so as to prevent the
discharge of the duties of said receivers or the operation of said property,
* * * and from instituting or prosecuting any actions, suits or proceed-

ings against the defendant, the Yaryan Naval Stores Company, or any action, suits, or proceedings affecting any property in which the Yaryan Naval Stores Company is interested, without the order and permission of this court."

In accordance with the terms of this order, the receivers have continued the business of the company, and in so doing have incurred debts and have entered into various contracts which are in process of performance. No ancillary proceedings have been instituted in the state of Ohio, where a small part of the company's property is located.

On December 1, 1913, three unsecured creditors of the Naval Stores Company, who had not appeared in the suit in Georgia, nor obtained leave of that court so to do, filed a petition in the United States District Court for the Northern District of Ohio, Western Division, praying that the company be adjudged a bankrupt. On December 15, 1913, the board of directors of the company adopted a resolution and caused a written copy thereof to be delivered to one of the petitioning creditors, whereby the company, in writing and substantially in the language of the Bankruptcy Act, admitted its inability to pay its debts and its willingness to be adjudged a bankrupt on that ground. Thereupon the creditors' petition was amended by leave of court, so as to allege the above admission as an act of bankruptcy. The answer of the company "admits each and every allegation contained in said petition and said amendments." Answers were filed by upwards of 20 opposing creditors and the receivers appointed by the court in Georgia, proofs were taken, a hearing had, and an order entered adjudging the Naval Stores Company a bankrupt upon the sole ground that it had committed an act of bankruptcy by its admission above set forth. This appeal from such order is prosecuted by the opposing creditors and the receivers.

The precise contention of the receivers and opposing creditors, urged in the court below and here, is thus stated by their counsel:

"The acts of the petitioning creditors in filing the original petition and the amendment thereto, and the several acts of the company in passing the resolutions admitting its inability to pay its debts and its willingness to be declared a bankrupt, the admission in writing of the same, and the filing of its answer to the petition and amendment, were each and all acts in violation of the order of injunction made by the District Court of Georgia, and in contempt of that court, and therefore null and void, and should not have been recognized or given effect by the court below."

It will be observed that the claim made is, not that the requisite conditions of bankruptcy did not exist, but that, because of the injunction, the parties who alone could assert those conditions to procure an adjudication were powerless to act.

The unsoundness of this contention is declared and demonstrated by the plain and positive provisions of the Bankruptcy Act itself. Section 4 thereof provides that:

"Any [every] person * * * shall be entitled to the benefits of this act as a voluntary bankrupt," and "any [every] natural person * * * and any [every] moneyed, business, or commercial corporation, * * * owing debts to the amount of one thousand dollars or over, may be adjudged an involuntary bankrupt upon default or an impartial trial, and shall be subject to the provisions and entitled to the benefits of this act."

This language is so broad and comprehensive as to be all-embracing and all-inclusive. It clearly manifests the intention of Congress to confer the rights and privileges of the Bankruptcy Act upon all persons and all corporations except those expressly exempted from its operation. Rights and privileges so positively bestowed cannot be destroyed, denied, or abridged by any power save that which created and brought them into being. Nor, in the absence of specific declaration, will it be presumed that any court intends to make an order which must be ineffective because in direct conflict with the legislative will and mandate.

The settled rule is that the jurisdiction of the courts in bankruptcy in the administration of the affairs of insolvent persons and corporations is exclusive and paramount. In re Watts & Sachs, 190 U. S. 1, 23 Sup. Ct. 718, 47 L. Ed. 933; Acme Harvester Co. v. Beekman Lumber Co., 222 U. S. 300, 32 Sup. Ct. 96, 56 L. Ed. 208; United States Fidelity & Guaranty Co. v. Bray, 225 U. S. 205, 32 Sup. Ct. 620, 56 L. Ed. 1055; Leidigh Carriage Co. v. Stengel (C. C. A. 6) 95 Fed. 637, 37 C. C. A. 210.

In the present case, the Naval Stores Company had the undeniable right to go into voluntary bankruptcy, and to take any legitimate steps to bring about that result, and to obtain for itself and its creditors the benefits of the Bankruptcy Act. The petitioning creditors were also clearly within their rights when they applied for and obtained from the court having jurisdiction an order adjudging the company a bankrupt. Indeed, upon the showing made, the court of bankruptcy could not have denied the relief which it alone had jurisdiction and authority to grant.

In the appointment of the receivers and the issuance of the injunction, the powers of the court in Georgia were likewise properly exercised. There the solvency of the company was averred and admitted. The necessary element of involuntary bankruptcy was wanting. Only a court of equity could give the desired relief. But the order of that court must be read and interpreted in the light of, and in connection with, the relevant and explicit provisions of the controlling act of Congress. When so read and interpreted, it contains nothing which indicates an intention to prohibit a due application being made to the appropriate bankruptcy court, or the exercise by the latter court of its special jurisdiction and powers, whenever the requisite statutory conditions might be found to exist.

We are not impressed with the argument that the bankruptcy act was not properly invoked on the ground that the receivership was not an act of bankruptcy, and, if it had been, was not assailable because bankruptcy proceedings were not begun within four months thereafter. This contention overlooks the consideration that the act on which the adjudication is based is not the original receivership, but the debtor's admission of insolvency, presumably occurring or discovered subsequent to the original receivership. To deny the right of the debtor, when such insolvency is found to exist, to take the benefit of the act and thereby secure a discharge from its debts, is to deny the ultimate

paramountcy of the act, which is designed, not merely for the benefit of creditors, but for that of the debtor as well.

The present appeal does not involve nor require the determination of any conflicting claims concerning the right to the immediate possession of any portion of the property of the bankrupt, and no such question is decided.

The order of the District Court will be affirmed.