**UNITED STATES of America, Plaintiff,**

v.

**ROYAL BUSINESS FUNDS CORPORATION, Defendant.**

No. 82 Civ. 4564 (WCC).

United States District Court,
S.D. New York.

April 15, 1983.

Eric S. Benderson, Associate Gen. Counsel for Litigation, U.S. Small Business Admin., Washington, D.C., Otterbourg, Steindler, Houston & Rosen, P.C., Special Counsel for U.S. Small Business Admin., New York City, for plaintiff; Morton L. Gitter, New York City, of counsel.

Robson, Miller & Osserman, New York City, for defendant; Morton S. Robson, New York City, of counsel.

---

## OPINION AND ORDER

CONNER, District Judge:

This matter is currently before the Court upon the motion of the United States Small Business Administration ("SBA") for an order staying or dismissing the Chapter 11 petition filed on March 28, 1983 by defendant Royal Business Funds Corporation ("Royal"). See *In re Royal Business Funds Corporation,* 83 Bkcy. 10463 (S.D.N.Y.) (BRL). Because I conclude that Royal acted in complete disregard of an Order entered by this Court on July 15, 1982 pursuant to 15 U.S.C. § 687c(b) which divested Royal of its power to file such a petition absent this Court's approval, the SBA's motion is granted.

*Background*

This action was commenced by the SBA on July 13, 1982 to protect its investment in defendant Royal. Royal is a small business investment company, duly licensed by the SBA. According to the complaint, the SBA has advanced a substantial amount of financial assistance to Royal during the past twenty years. (Complaint ¶¶ 6–7). The SBA alleges that Royal has defaulted in the repayment of these obligations, which as of July 6, 1982 amounted to $23,417,254.32, including principal and accrued interest. (Complaint ¶¶ 9–10).

On July 15, 1982, the parties entered into a stipulation of settlement which provided, *inter alia,* that the SBA would be appointed receiver of Royal. Paragraph 1 of that stipulation states:

Effective forthwith the SBA shall be appointed receiver of the Royal Business Funds Corporation and shall have exclusive power to collect and administer the assets of such defendant under the direction of the Court, and the Court shall retain jurisdiction of this matter and of the parties until further direction of the Court in such regard.

Paragraph 5 of the stipulation further provides that:

The present members of the Board of Directors of the defendant shall continue in office during the receivership of the SBA with no function other than the appointment and replacement of counsel.

That same day, this Court entered an Order taking "exclusive jurisdiction of Royal Business Funds Corporation ... and all of its assets, whereever [sic] located." Order dated July 15, 1982 at ¶ 1. This Court's Order also stayed all other legal actions involving Royal, and enjoined Royal, its officers and directors and others from taking any action to the detriment of the SBA.

9. All legal proceedings of any nature, whereever [sic] located, involving Royal Business, or any of its assets, are hereby stayed, and all Courts having any jurisdiction thereof are hereby enjoined from taking any further action until further Order of this Court.

10. The defendant Royal Business and its directors, officers, agents, employees and other persons acting in concert or in participation therein be, and hereby are enjoined from directly or indirectly taking any actions or causing any actions to be taken which would dissipate the assets and property of defendant, Royal Business, or the assets and property of any wholly owned subsidiary of Royal Business, to the detriment of the Receiver appointed herein, or which would violate the Small Business Investment Act of 1958, as amended, or the regulations promulgated thereunder.

*Id.* at ¶¶ 9–10.

In the face of this Order, the directors of Royal held a meeting on March 25, 1983 and passed two resolutions which purported to give Seon Pierre Bonan, Royal's president, the power and authority to file a petition for relief under Chapter 11 of the Bankruptcy Code.[1] See Robson Affidavit at ¶ 7.

1. Although the SBA expends considerable time and energy arguing that the meeting at which these resolutions were passed was not duly constituted, that matter is wholly irrelevant to the Court's determination. If the only question

tions surrounding the propriety of the Chapter 11 petition concerned the validity of the board meeting and other ordinary issues of corporate authority, I would certainly leave that matter in the competent hands of Judge Lifland. Rather,

That petition was subsequently filed on March 28, and is currently pending before Judge Lifland of the Bankruptcy Court for this district.

*Discussion*

In support of its contention that the bankruptcy proceeding should be allowed to continue unhindered, Royal cites an impressive string of cases holding that the pendency of a receivership does not preclude a corporation from filing a bankruptcy petition. See, *e.g., In re Yaryan Naval Stores Co.,* 214 F. 563 (6th Cir.1914); *In re Donaldson Ford, Inc.,* 19 B.R. 425 (Bkrtcy.N.D.Ohio 1982). While the SBA is either unaware of these holdings or has apparently chosen to pretend that they do not exist, the Court cannot act so cavalierly. At the same time, the general language of these rulings cannot talismanically justify the actions of Royal's board. Upon close analysis, it is clear that the rationale underlying those decisions which have permitted a company to commence bankruptcy proceedings during the pendency of an equity receivership without prior court approval and in spite of the existence of a court injunction is inapplicable in the instant case, where this Court has exercised its jurisdiction pursuant to an express Congressional enactment authorizing it to take "exclusive jurisdiction" over Royal. See 15 U.S.C. § 687c(b).

In *Jordan v. Independent Energy Corp.,* 446 F.Supp. 516 (N.D.Tex.1978), the court undertook a thorough discussion of the relevant authorities before concluding that although its "blanket receivership injunction" could theoretically restrain both voluntary and involuntary access to the bankruptcy courts, it would not so enjoin the parties under the circumstances of that case. See 446 F.Supp. at 525–30. The court made it clear that those cases holding that the pendency of a *state* receivership cannot bar the filing of a federal bankruptcy petition rest upon the grant of exclusive bankruptcy jurisdiction to the federal courts and Constitutional principles of supremacy, and thus are inapposite when a federal court receivership is in issue. See *id.* at 525, 525 n. 14; see also *In re Allied Const. Co.,* 79 F.Supp. 141, 142 (W.D.Pa.1948). But when a federal receivership is in existence, those courts that have acknowledged the power of either the company or a creditor to file a petition in bankruptcy have relied upon the broad language of the Bankruptcy Act as expressing "the intention of Congress to confer the rights and privileges of the Bankruptcy Act upon all persons and all corporations except those expressly exempted from its operation." *Yaryan Naval Stores, supra,* 214 F. at 565; see *Jordan, supra,* 446 F.Supp. at 526–27; *Donaldson Ford, supra,* 19 B.R. at 429–30.

In *In re Naftalin & Co.,* 315 F.Supp. 463 (D.Minn.1970), the court rejected a claim that a district court order appointing the Securities and Exchange Commission ("SEC") receiver of Naftalin barred its creditors from pursuing an involuntary bankruptcy petition. See *id.* at 468. The original action in which the district court appointed the SEC as receiver was properly in federal court as a consequence of § 27 of the Securities Exchange Act of 1934 (the "Act"), 15 U.S.C. § 78aa, which provides for "exclusive" federal jurisdiction over violations of the Act. The court refused to accept Naftalin's argument that once a district court takes jurisdiction of a matter under the Act it does so to the exclusion of all other courts, holding instead that "[a] proper reading of Section 27 dictates that the word 'exclusive' be interpreted to require only that federal courts as opposed to state courts must hear matters concerning violations of the Securities Exchange Act of 1934." *Id.* at 467.

■ Unlike a receivership under the federal securities laws or in any of the cases cited by Royal, however, § 687c(b) reflects and embodies Congress's clear intent that the court which chooses to exercise "exclusive" jurisdiction under the Small Business Investment Act do so to the exclusion of all

---

it is because the prior Order of this Court enjoins even a duly constituted Royal board from taking such action absent this Court's approval that the result reached here is mandated.

other courts. Although there exist no cases involving this issue in the context of a receivership under the express authority of § 687c(b), the court in *United States v. Norwood Capital Corp.,* 273 F.Supp. 236 (D.S.C.1967), had occasion to review the Congressional intent underlying the receivership provisions of the Small Business Investment Act, finding it "clear that the purpose of the federal receivership was to protect the assets pending the Small Business Administration's recovery on its investment, as well as to permit discovery of any past abuses of program funds." *Id.* at 240. To that end, the court noted that Congress had expressly authorized a court in its discretion to take exclusive jurisdiction where appropriate to further these goals. *Id.* at 242.

In the instant case, § 687c(b) provides the countervailing Congressional expression found wanting in *Yaryan Naval Stores, supra,* and the cases which have relied upon its rationale, see, *e.g., Jordan, supra,* 446 F.Supp. at 526–27, and which is not embodied in § 27 of the Securities Exchange Act of 1934. Thus, when this Court entered its Order of July 15, 1982 appointing the SBA receiver of Royal and taking exclusive jurisdiction of Royal and its assets, it did so to the exclusion of all other courts. Accordingly, under the terms of the injunction contained in that Order, Royal was without power to file a Chapter 11 petition without prior approval from this Court. Since it did not have such authorization, it has acted in violation of the injunction.

My conclusion that Royal's board acted improperly is strengthened by the fact that Royal was a party to the stipulation that led to the appointment of the SBA as receiver. It would be highly inequitable to allow Royal to settle the SBA's substantial, and perhaps even existence-threatening, claims against it by agreeing to the appointment of a receiver, and then unilaterally to circumvent the settlement to the detriment of the SBA because its majority shareholders do not like the quality of the receiver's performance. The officers and directors of Royal agreed on July 15, 1982 to give up their daily operating control of Royal. If they now believe the receiver is handling matters improperly, their remedy is to come to this Court and ask to have the conditions of the receivership modified or for permission to file a petition in bankruptcy, if appropriate. It is for precisely this purpose that the Court retains continuing jurisdiction over Royal under its July 15 Order and under 15 U.S.C. § 687c. Although the affidavits submitted by Royal on the instant motion recite the unfair treatment it is allegedly receiving at the hands of the SBA receiver as a justification for its filing of the Chapter 11 petition, I note only that those arguments should have been addressed to this Court anticipatorily in support of an application to proceed, rather than belatedly in seeking ratification of a *fait accompli.*

Accordingly, for the reasons stated above, the bankruptcy proceeding *In re Royal Business Funds,* 83 Bkcy. 10463 (S.D.N.Y.) (BRL), must be stayed.[2]

SO ORDERED.

---

2. Although the SBA urges the Court to halt the Chapter 11 petition by withdrawing the reference to the bankruptcy court pursuant to Emergency Bankruptcy Rule I for the United States District Court for the Southern District of New York, its position overstates this Court's authority under that Rule. Emergency Rule I was intended only to handle the unusual situation created by the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), and was not designed to give the district court extra supervisory powers over the bankruptcy in the ordinary case.